```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA
```

JERRY W. COFFEY,                )
                                )
            Plaintiff,          )
                                )
v.                              )    Case No. CIV-06-272-KEW
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.          )

**OPINION AND ORDER**

Plaintiff Jerry W. Coffey, (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED AND REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or

mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

"substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on March 3, 1946 and was 59 years old at the time of the hearing before the ALJ. He completed his education through high school and four years of college. Claimant worked as a president of a product sales company and regional sales manager. Claimant alleges an inability to work beginning September 15, 2001, due to a colostomy, hernia, depression, anxiety, TMJ, ringing in the ears, emphysema, disc compression in the neck, and alcohol abuse.

### Procedural History

On May 23, 2003, Claimant protectively filed for disability benefits under Title II of the Social Security Act (42 U.S.C. §

401, et seq.) and Supplemental Security Income under Title XVI of the Social Security Act (42 U.S.C. § 1381, et seq.). Claimant's application for benefits was denied initially and upon reconsideration. A hearing before ALJ, Michael A. Kirkpatrick was held on October 19, 2005, in Hugo, Oklahoma. By decision dated February 3, 2005, the ALJ found that Claimant was not disabled at any time through the date of the decision. On May 31, 2006, the Appeals Council denied review of the ALJ's findings. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981, 416.1481.

### **Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant had physical impairments that were severe, they did not meet a Listing and he retained the residual functional capacity ("RFC") to perform sedentary work, including his past relevant work as a president of a product sales company.

### **Review**

Claimant asserts the ALJ committed error requiring reversal in failing to (1) perform a proper evaluation at steps two, three, and four of the sequential evaluation process; (2) give the appropriate weight to Claimant's treating physician's opinion; and (3) engage in a legally sufficient credibility analysis.

4

## Treating Physician's Opinions

Claimant asserts the ALJ failed to attribute the appropriate weight to the opinions of Dr. James Howard and Dr. Chuka Odunuke, both of whom are Claimant's treating physicians. Because this Court finds the ALJ erred by failing to attribute weight to the opinions from these physicians, the decision is deficient at all subsequent steps in the sequential evaluation.

The ALJ specifically considered the opinion from a Mental Residual Functional Capacity form completed by Dr. Howard on September 25, 2005. The ALJ concluded the opinion reflected in the Medical Assessment form was entitled to little weight as being "an act of courtesy to a patient of long-standing, rather than a genuine medical assessment of discrete functional limitations based upon clinically established pathologies." The ALJ also stated that the assessment of Dr. Howard was unsupported by, and inconsistent with, the credible evidence of record. Thus, the ALJ declined to attribute controlling weight to Dr. Howard's opinion. (Tr. 21)

The ALJ also considered the opinion from Dr. Chuka Odunuke. The ALJ specifically considered the Residual Functional Capacity To Do Work Related Activities form completed by Dr. Odunuke on October 12, 2005. The ALJ concluded the opinion reflected in the Medical Assessment was "deficient, without supportive medical documentation." Further, he found "his only written comments were that the claimant was functionally limited, but he did not describe a medically determinable impairment that could

5

reasonably cause such limitations.  He provided no clinical signs in support of his conclusions.  He did not refer to reports of individual providers, hospitals, or clinics, and he did not indicate on what basis, if any his treatment of the claimant would support his conclusions."  (Tr. 21)  The ALJ found the assessment was clearly based on the claimant's subjective complaints, which he did not find to be credible.  Dr. Odunuke's treatment records were found to be inconsistent with his pessimistic functional assessment.  Id.

The ALJ acknowledged that both Dr. Howard and Dr. Odunuke were treating physicians. (Tr. 22) The Mental Residual Functional Capacity Assessment completed by Dr. Howard found severe limitations in the ability to: (1) maintain attention and concentration for extended periods;  (2) complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  He found marked limitations in the ability to (1)  remember locations and work-like procedures; (2)  understand and remember detailed instructions; (3) to carry out detailed instruction; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5)  sustain an ordinary routine without special supervision; and (6) respond appropriately to changes in the work setting.  Moderate limitations were noted in the ability to: (1) understand and remember very short and simple instructions; (2) carry out very

6

short and simple instructions; work in coordination with or proximity to others without being distracted by them; (3) interact appropriately with the general public; (4) ask simple questions or request assistance; (5) get along with coworkers or peers without distracting them or exhibiting behavior extremes; and (6) travel in unfamiliar places or use public transportation. (Tr. 436-437) Dr. Howard opined that Claimant's mental status showed that he was "alert, oriented, cooperative, coherent, intellectually bright but struggling with self-awareness and body image because of his numerous medical, surgical, and psychological impairments; no suicidal or homicidal ideation; no evidence of substance abuse or hallucinations; some paranoid thinking that may be delusional; depressed; anxious; some forgetfulness." (Tr. 438) Dr. Howard found that Claimant "has numerous and various stressors, many of which he cannot avoid; there is impairment in his ability to think, reason, and respond, sometimes quite severely." (Id.) Recommended treatment included "continued counseling and psychiatric medication management. Prognosis suggest lifelong impairment with some improvement fluctuation in impairment." (Tr. 439) Claimant was diagnosed with a mood disorder, not otherwise specified, severe; sleep problems; colypharmacy. (Id.)

Dr. Odunuke completed a Residual Functional Capacity To Do Work Related Activities form on October 12, 2005. He opined Claimant could occasionally lift and carry up to ten pounds. He was not limited in the use of his feet or hands for repetitive

7

movements.  Claimant could occasionally bend, handle (right), handle (left), finger (right), finger (left) but he was unable to squat, crawl, and climb.  Dr. Odunuke also found Claimant was unable to: "(1) work at unprotected heights; (2) be exposed to marked changes in temperatures and humidity, and (3) be exposed to dust, fumes, and gases. (Tr. 422) Claimant had moderate limitations in: (1) being around moving machinery; (2) driving; and (3) vibrations.  Dr. Odunuke opined Claimant would be unable to work on a sustained and continuing basis (6 hours per day, 5 days per week). (Id.)  It was anticipated that Claimant's impairments would result in absence from work approximately twice per month.  (Tr. 423).

In deciding how much weight to afford to the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight."  Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  An ALJ is required to give the opinion of the treating physician controlling weight if it is both:  (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record."  Id. (quotation omitted).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

Even is a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the

factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors referenced in that Section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01(quotation omitted). After considering these factors, the ALJ must "give good reason" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004) (citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301.

Evidence from the record generally supports the problems of which Claimant complained when attended by both Dr. Howard and Dr. Odunuke as well as the restrictions contained within the Medical Assessment forms. Visits to other medical facilities and physicians reflect the same complaints, level of pain, restricted

9

mobility, and mental impairments.  The wholesale rejection of opinions from Dr. Howard and Dr. Odunuke without engaging in the analysis required by the Social Security regulations and controlling precedent is unacceptable.  The ALJ must progress through the "controlling weight/deferential weight" analysis and explain with a certain degree of specificity as to the reasons for rejecting these opinions.  The ALJ failed to do so in this case, requiring reversal.  Further, since the ALJ's conclusions at step two, three, and four were formed without any consideration of the opinions from Dr. Howard and Dr. Odunuke, the decision must be reversed.  The ALJ sets forth Claimant's physical capabilities which were markedly less restrictive than those opined by Dr. Howard and mental limitations opined by Dr. Odunuke, both of which were treating physicians.  On remand, the ALJ shall reconsider his conclusions at steps two, three, and four after engaging in the required analysis of the assessments by Dr. Howard and Dr. Odunuke.

### **Claimant's Credibility**

As a final issue, Claimant contends the ALJ erred in his credibility findings.  The ALJ concluded that having canvassed Claimant's hearing testimony, along with other record evidence, he found that "claimant's complaints of adverse symptomology are just not believable to the extent alleged.  The claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the claimant's own description of his activities and life style, the

conservative nature and the infrequency of medical treatment required, the reports of the treating and examining practitioners, the medical history, the findings made on examination, and, most importantly, claimant's demeanor at hearing and marked discrepancies between his allegations and the information contained in the documentary reports." (Tr 23) Other than noting, in general, that evidence did not support a finding of disability and commenting on his impression of Claimant's demeanor at the hearing, the ALJ fails to link his negative credibility determination with the evidence developed at the hearing.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

In this case, the ALJ's discussion of Claimant's credibility lacks a stated factual foundation. As a result, on remand, the ALJ shall draw the affirmative link between his credibility conclusion and evidence in the record which is required by the prevailing case authority.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not

applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is REVERSED and the matter REMANDED for further proceedings consistent with this Order.

DATED this 25th day of April, 2007.

Kimberly E. West
United States Magistrate Judge
Eastern District of Oklahoma